SIDE ABDELLAH, Appellant, v. SOLOMON HODGE, and Odin Stray, as Sheriff of Mountrail County, North Dakota, Respondents.

(213 N. W. 495.)

**Judgment — action to enforce — court may impose terms.**

1. In an equitable action to enjoin the enforcement of a judgment, the court has power to impose such terms and conditions as the exigencies of the case demand, to the end that justice may be done to all parties to the litigation; and, hence, in granting relief from a judgment, the court may impose terms that the adverse party be compensated for expenses incurred under the judgment.

**Judgment — injunction against enforcement.**

2. In the instant case it is held, for reasons stated in the opinion, that the trial court did not err in permitting the judgment creditor to retain the proceeds of certain property seized and sold under an execution issued upon the judgment.

Opinion filed March 21, 1927. Rehearing denied May 7, 1927.

Appeal and Error, 4 C. J. § 2651 p. 728 n. 45. Judgments, 34 C. J. § 783 p. 496 n. 14; § 789 p. 499 n. 68.

From a judgment of the District Court of Mountrail County, *Lowe,* J., defendant appeals.

Affirmed.

*R. E. Swendseid,* for appellant.

*F. F. Wyckoff,* for respondents.

PER CURIAM. This is a sequel to Hodge v. Abdellah, 54 N. D. 65, 208 N. W. 564. The facts are substantially as follows: On October 25, 1913, the summons and a duly verified complaint in the case of J. W. Warren and Lillian Warren against M. Resaake, Ally Ohmar and Side Abdellah were served personally upon the defendant Side Abdellah, within Mountrail county, by the sheriff of said county. The sheriff's return attached to the summons and complaint recited such service, and further stated that the sheriff was unable to locate either the defendant M. Resaake, or the defendant Ally Ohmar. The action was brought to recover the amount due on certain promissory notes, aggregating in all $1,500, claimed to have been executed by Side Abdellah, M. Resaake and Ally Ohmar, and payable to the order of said J. W. Warren and Lillian Warren. No appearance was made by the defendant Abdellah or in his behalf, and on December 19, 1914, judgment by default was rendered against him for the amount claimed in the complaint. Subsequent to the rendition of the judgment, the attorney of record for the plaintiffs in said action died, and the plaintiff, J. W. Warren, also, died. The estate of said J. W. Warren was duly probated and final decree of distribution entered therein. Such decree of distribution listed the judgment against Abdellah as among the property of said J. W. Warren, distributed thereby. Subsequent to the entry of said final decree of distribution one Solomon Hodge, one of the respondents here, purchased said judgment and received a written assignment thereof from each and all of the heirs of said J. W. Warren, deceased, and from Lillian Warren, the other plaintiff in said action. On October 7, 1924, the said Solomon Hodge filed an affidavit in the office of the clerk of the district court renewing said judgment.

On September 19, 1925, an execution was issued upon said judgment and certain personal property belonging to the defendant Side Abdellah, including a certain quantity of grain, was seized under said execution. After such property had been seized, a stipulation was

entered into between counsel for the respective parties whereby it was stipulated that a certain portion of the grain held by the sheriff be sold in the market and the proceeds of sale applied in payment of a certain indebtedness in favor of one Worster, and secured by chattel mortgage upon the grain. After the property had been so seized under execution, Abdellah moved that the judgment be vacated and that he be permitted to answer in the action. On November 24, 1925, the district court made an order granting the motion. Solomon Hodge appealed from such order and on March 26, 1926, this court rendered its decision that the order of the district court be reversed. Hodge v. Abdellah, supra.

On January 20, 1926, after said Solomon Hodge had perfected his appeal from the order vacating the judgment, a stipulation was entered into between Solomon Hodge and Side Abdellah through their attorneys of record, whereby it was agreed that all grain seized by the sheriff under the execution be sold at the then market price and the proceeds thereof held "by the sheriff and disposed of by him in the manner following, to-wit: . . . that the sheriff of said county forthwith sell of the grain represented by the said storage tickets at the market price and that he immediately thereafter out of the proceeds of said sale pay to Edward Will or the Stanley Implement & Lumber Company the sum of two hundred forty-eight and 74/100 dollars, on an order which he or it holds from Theodore Tweet for the thresh bill for threshing said grain; *that the balance of the proceeds from said sale be held by the Sheriff of said county until the remittitur is transmitted to the above named court from the supreme court on the said appeal herein mentioned, and that if the said order of the said Judge Moellring be reversed by the supreme court then the said sheriff is hereby authorized and directed to pay the balance of the proceeds from said grain to the said Solomon Hodge or his attorney to be applied on said execution,* and if the said order of the said Judge Moellring be affirmed by the supreme court then the balance of the proceeds from said grain is to be paid by the said sheriff to Side Abdellah or his attorney."

After this stipulation had been made there was presented to the sheriff of Mountrail county a written order, signed by the attorneys of record for both parties, directing the sheriff to sell the grain then in his possession conformably to the stipulation. The sheriff carried

out these instructions and after paying the amount required to be paid to Edward Will or the Stanley Implement & Lumber Company, there remained in his hands the sum of $781.91. The decision of the supreme court reversing the order of the district court was rendered March 26, 1926; rehearing was denied April 24, 1926. On March 27, 1926, the attorney of record for Hodge presented a copy of the decision of the supreme court to the sheriff and demanded from him a payment of the moneys in his hands under the above mentioned stipulation. The sheriff thereupon paid the same over to said Hodge's attorney of record and such attorney, after deducting his fees and costs, paid the remainder over to said Hodge. Thereafter, on April 27, 1926, said Side Abdellah commenced this action in equity to enjoin the enforcement of the aforesaid judgment rendered in favor of said J. W. Warren and Lillian Warren against Side Abdellah and assigned to said Hodge. In his complaint he asked also that all of the property seized under said judgment or the proceeds thereof be returned to said Abdellah. The case was tried to the court without a jury and resulted in findings in favor of the plaintiff, and upon such findings the trial court ordered judgment to be entered enjoining the further enforcement of the judgment; but refused to order judgment for a return of the proceeds of the property, seized under the execution, which the sheriff had delivered to the defendant prior to the commencement of this action. In other words, the trial court refused to require either the sheriff or Hodge to pay to the plaintiff the $781.91 proceeds of the grain seized under the execution or any part of such sum. Although a statement of case has been settled containing a complete transcript of all the evidence taken upon the trial, there is no demand for a trial anew in the statement of case; and the specifications of error presented by the appellant challenge only the correctness of that portion of the judgment which denied to said Side Abdellah judgment for the proceeds of the grain which the sheriff delivered to the attorney of record for said Hodge. In order to review this portion of the judgment, however, it has become necessary to read the entire record. And after a careful consideration of all the evidence adduced upon the trial we fail to see any basis for awarding plaintiff any more favorable judgment than that rendered by the district court. On the contrary, we are

rather persuaded that the judgment rendered by the trial court was more favorable than the evidence adduced upon the trial justified.

In the decision rendered in Hodge v. Abdellah, supra, this court said:

"The ground of defendant's motion to vacate the judgment herein, as stated in such motion, is that the judgment was secured through fraud. The real basis of the motion, however, as gathered from the affidavits submitted in support of the motion to vacate, is that the defendant was, and is, mentally incompetent. The memorandum opinion made by the trial judge also clearly indicates that this was the principal reason for vacating the judgment. *It could hardly be contended that, apart from the showing as to mental incompetence, there is any sufficient showing to justify a vacation of the judgment.* The motion to vacate was heard before a judge other than the one by whom the judgment was ordered. The showing made in support of the motion to vacate, as well as in opposition thereto, consists wholly of affidavits. In view of the conclusion already reached, we do not deem it necessary to refer to these affidavits in detail. But, considering the affidavits as a whole, in light of the undisputed facts as they appear in the record, we are of the opinion that the judgment here ought not to be vacated on motion at all, but the defendant should be required to resort to his remedy by action." 54 N. D. 68, 208 N. W. 565, 566.

The record transmitted on this appeal demonstrates that upon trial of this action the plaintiff failed to make as strong a showing of fraud as that made by the affidavits submitted upon the application to set aside said judgment. The evidence adduced by the plaintiff in this case is to the effect that the plaintiff Abdellah is a Syrian and does not read or write the English language and speaks it with difficulty. Certain testimony was offered to show that he is of subnormal mentality. The evidence tending to establish this consisted of the testimony of the manager of a grain elevator who stated that during a number of years he had purchased grain from Abdellah; that at times Abdellah had mistaken storage tickets and scale slips for bank checks, supposing that such storage tickets or scale slips were checks given in payment of the grain.

In response to questions asked by the court, the same witness testified:

"Q. Anything else in your business transactions that would indicate to you his mental capacity? A. Well, he could not tell by looking at the scale ticket, he could not tell what it was. I often told him to look at the scale and read it.

"Q. He did not know what those figures were on there?

"A. No.

"Q. Did that indicate to you that there was something wrong with his head or education? A. No, there was nothing wrong with his head.

"Q. Lack of education? A. Lack of English education and not knowing anything about business, that is all."

It appears from the evidence that Abdellah has conducted his business generally and has been admitted a citizen of the United States after proceedings duly had in the district court of his county for that purpose. On the trial of this action no interpreter was used; and Abdellah's answers to the various questions put to him were intelligent responses thereto. This action was brought in his own name and not by a guardian.

So far as the evidence relating to the alleged fraud in the procuring of the judgment is concerned, we are inclined to the view that the evidence is insufficient; and if the trial court's findings on that issue were before us we should feel impelled to set them aside. The sole basis for a finding that the judgment was procured by fraud is the testimony of Lillian Warren to the effect that she did not authorize the attorney who procured the judgment to institute the action. There is not a scintilla of evidence, however, to the effect that her husband did not authorize the action to be brought, or that he did not employ the attorney who instituted the same to do so. And upon the record before us, we think that only one conclusion can reasonably be reached and that is that J. W. Warren did employ such attorney to institute the action. Such attorney apparently had the notes in his possession and, presumptively, they were produced in court as evidence at the time the district court ordered the default judgment to be entered. It is undisputed that the summons and complaint in the action were regularly served personally upon said Abdellah by a deputy sheriff of Mountrail county, and there is not the slightest contention that anything was said or done, either by Warren or by the attorney who instituted the action,

to deceive or mislead said Abdellah or prevent him from interposing any defense he might have desired to interpose in the action. In due course of time judgment by default was regularly entered.

There is no basis in the record for any inference that the attorney who procured the judgment had the slightest personal interest in the cause of action or the judgment rendered, or that any act on his part in the conduct of the litigation was improper or influenced by improper motives. There is not a scintilla of evidence tending to show that Hodge had anything whatever to do with procuring the judgment, or that he had any knowledge of any fact relating to the rendition of such judgment except such as was conveyed to him by the record.

The rules relating to relief from a judgment on the ground of fraud or misconduct of the prevailing party are too well settled to require elaboration here. See 3 Freeman, Judgm. 5th ed. §§ 1213 et seq.; (3 Freeman, Judgm. 5th ed. § 1233), says:

"The fraud for which a judgment may be vacated or enjoined in equity must be in the procurement of the judgment. If the cause of action is vitiated by fraud, this is a defense which must be interposed, and unless its interposition is prevented by fraud, it cannot be asserted against the judgment; 'for judgments are impeachable for those frauds only which are extrinsic to the merits of the case, and by which the court has been imposed upon or misled into a false judgment. They are not impeachable for frauds relating to the merits between the parties. All mistakes and errors must be corrected from within by motion for a new trial, or to re-open the judgment, or by appeal.' The fraud must be 'in some matter other than the issue in controversy in the action.' "

In our opinion the evidence in this case was insufficient to justify a finding of fraud, and if that question were before us we should feel impelled to so hold. But, inasmuch as there is no demand for a review of the entire case, we are limited to a review of the specified questions of fact. Section 7846, Compiled Laws of 1913. And, as has been stated, the specifications are limited to that portion of the judgment which relates to the disposition of the $781.91, the proceeds of the grain which the sheriff turned over to Hodge, or his attorney, prior to the commencement of this action. But, as we have stated, in order to review the facts as regards this portion of the judgment, it has be-

come necessary for this court to read and consider all the evidence adduced upon the trial, and, a consideration of such evidence leads us to the conclusion that the judgment rendered by the trial court was more favorable to the defendant than he was entitled to obtain; and, obviously, the plaintiff is not entitled to judgment for the proceeds of the grain seized under the execution unless the evidence is sufficient to justify relief against the judgment, and he is in no position to complain because the judgment rendered was more favorable to him than the evidence warranted. Apparently, the trial court determined that it would grant the plaintiff relief against the judgment only on the condition that Solomon Hodge, the assignee of the judgment, be permitted to retain the $781.91 received by him or his attorney out of the proceeds of the grain seized by the sheriff under the execution. The trial court might well have concluded that Solomon Hodge ought to be permitted to retain these moneys to reimburse him for expenses incurred and loss sustained on account of the proceedings had under the judgment. The trial court had unquestioned power to impose such terms in granting plaintiff relief from the judgment. 3 Freeman, Judgm. 5th ed. § 1193; 34 C. J. 499.

The judgment appealed from is affirmed.

BIRDZELL, Ch. J., and CHRISTIANSON, NUESSLE, BURKE, and BURR, JJ., concur.